**MAGNUS ELECTRONICS, INC., Plaintiff,**

v.

**ROYAL BANK OF CANADA, et al., Defendants.**

No. 84 C 7630.

United States District Court, N.D. Illinois, E.D.

Oct. 8, 1985.

Scott A. Brainerd, Brainerd & Bridges, Chicago, Ill., for plaintiff.

Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., Bruno A. Ristau, Kaplan, Russin & Vecchi, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

Magnus Electronics, Inc. ("Magnus") originally sued Aerolineas Argentinas ("Aerolineas") and Royal Bank of Canada ("Bank") because of the nondelivery of Magnus' goods sold to Argentine purchaser Alfredo DiLullo ("DiLullo"). When Magnus struck out against Aerolineas (see this Court's three opinions reported beginning at 611 F.Supp. 436), it shifted to an attack on the Argentine Republic ("Argentina") via its Second Amended Complaint (the "Complaint"). Argentina promptly moved for dismissal for lack of jurisdiction (both over it, Fed.R.Civ.P. ("Rule") 12(b)(2), and over the subject matter, Rule 12(b)(1)). It is right on both grounds, and this action is dismissed.

### Facts [1]

In October 1981 Magnus entered into a written contract to sell goods to DiLullo (Complaint ¶ 3). Under the contract Magnus was to cause the goods to be delivered to DiLullo in Buenos Aires through Bank, which was to assure that the goods were delivered only against payment of the purchase price (Complaint ¶ 4). Magnus' freight forwarder caused the goods to be shipped to Miami, where Aerolineas took possession under an airway bill designating Bank as sole consignee (id.).

On November 11, 1981 (shortly after the goods had arrived in Buenos Aires) "agents of the Argentine Air Force, acting in their capacity on behalf of the Argentina [sic] military, unlawfully seized and took possession of [Magnus'] goods in Argentine customs" (Complaint ¶ 7). That conversion

---

1. This account is drawn from the Complaint. Magnus' responsive Memorandum has impermissibly amplified its own allegations with assertions contained in a letter its lawyer wrote this Court April 30, 1985. That letter was written after this Court had dismissed Magnus' claim against Aerolineas, when Magnus sought to show Aerolineas has fraudulently concealed the existence of Magnus' cause of action. This Court simply assumed those assertions were true arguendo in its First Supplemental Opinion, 611 F.Supp. at 444–45. Contrary to Magnus' present assertion, that did not make the letter part of the official record. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984). And certainly Magnus' May 20, 1985 filing of the Complaint after having written that letter, without embodying those assertions in the Complaint, must be viewed as its choice to go with the Complaint's allegations rather than the earlier statement. In much the same way Magnus' lawyer has just (after this opinion was already dictated and on the word processor) sent an unbidden October 7 letter "by way of response to defendant's reply brief in support" of Argentina's current motion. That letter, filed without leave of court and stating a desire to amend the Complaint further to "plead[ ] a conspiracy between Argentina, its 100% owned airline, and DiLullo," has not been taken directly into account in this opinion. It is not clear, however, how any amendment based on either of counsel's letters would change the result reached here (and counsel must be mindful of the Rule 11 implications of wrenching the facts to get around that result).

was implemented by use of at least one forged document (*id.*), information of the seizure and conversion was suppressed and the goods were classified as "War Secret" material (Complaint ¶ 8). Magnus believes DiLullo "also participated in the aforesaid fraud and withheld information of the unauthorized release" (*id.*).

"In so acting to cause [Magnus'] goods to be fraudulently converted for Argentine military purposes, the Country of Argentina has acted in violation of international law" (Complaint ¶ 9). Those acts of fraud and conversion are alleged to be "without the scope of sovereign judicial immunity" (Complaint ¶ 10).

### Lack of Personal Jurisdiction

■ Argentina is a sovereign state. As with any sovereign, it is amenable to suit only by strict and literal compliance with the Foreign Sovereign Immunities Act of 1976 (the "Act"), 28 U.S.C. §§ 1330 and 1602–1611,[2] for "the comprehensive scheme established by the [Act] is the exclusive means by which foreign countries may be sued in American courts." *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 372 (7th Cir.1985) (per curiam).

Section 1608(a)(3) mandates service on Argentina's Ministry of Foreign Affairs "by any form of mail requiring a signed receipt." In this case it appears Magnus arranged for *delivery* to the Argentine Ministry by an Argentine notary, instead of service by mail.

■ That noncompliance with the Act's literal requirements (though it certainly did provide notice) deprives this Court of personal jurisdiction.[3] But because such a procedural defect is obviously curable, this opinion goes on to deal with the noncurable subject matter deficiency in Magnus' claim.

### Lack of Subject Matter Jurisdiction

Again the sovereign status of Argentina forces Magnus to invoke the Act, without whose provisions Argentina is invulnerable to suit here. Magnus seeks to call into play Section 1605(a)(2):

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

First it is clear the action, predicated on an alleged fraudulent seizure and conversion of Magnus' goods in Argentina, is not within the statute's first clause, referring to "commercial activity carried on in the United States by the foreign state." Though Magnus, playing fast and loose with the rules, goes outside the record to ascribe Aerolineas' United States activities to Argentina, even it does not say that provision applies. And of course the second clause of the statute is plainly inapplicable. Magnus claims instead under the last clause of Section 1605(a)(2).

But on that score Magnus has double difficulty: It fails to satisfy both the "commercial activity" requirement and the "direct effect" test. This opinion will deal with each in turn.

As for the "commercial activity" ingredient, Magnus attempts to gloss over the

---

**2.** All citations to the Act will simply take the form "Section —," with numerical references to Title 28 and not to the Act's internal numbering.

**3.** Argentina also claims (Mem. 6 n. 4) the "Notice of Suit," also required by Section 1608(a)(3), "did not comply with the form prescribed by the Secretary of State in the imple-

menting regulations, 22 C.F.R., Part 93." It also appears the transmittal may not have included a copy of the summons (another statutory requirement). This opinion however need not deal with those questions, because one flaw under the Act is as fatal as two or three.

consequence of the fact that, by its own description of the transaction, it "was of a commercial nature, [Magnus] sending goods to an Argentine buyer [DiLullo] in a regular, for-profit commercial transaction" (Magnus Mem. 7). *Argentina* was not in that conceded "commercial activity"—indeed Magnus' grievance is that Argentina wrongfully sidetracked that commercial transaction by intercepting the goods before they reached their rightful destination. Magnus simply cannot force its lawsuit based on that allegedly tortious conduct (an act of international piracy, as Magnus would have it) into the mold of "commercial activity of a foreign state."

■ That common sense meaning of "commercial activity" comports with the gravamen of the Section 1605(a)(2) exception. As *Harris v. VAO Intourist, Moscow,* 481 F.Supp. 1056, 1064 (E.D.N.Y.1979) put it:

> As it is used in section 1605(a)(2), "commercial activity" is meant to distinguish activity which results from what in our society would be termed governmental, public or sovereign enterprises—e.g., running police departments or parks—from those resulting from the acts of foreign state agencies or instrumentalities acting in what we would deem a commercial capacity—e.g., operating hotels or cruise ships. *See Yessenin-Volpin v. Novosti Press Agency, Tass,* 443 F.Supp. 849 (S.D.N.Y.1978).

For better or worse, governmental expropriation of private property is the paradigmatic instance of activity coming under the first rubric and not the second. Whatever else Argentina's alleged conduct may be termed, it is *not* "commercial activity."

**4.** In an instance typical of Magnus' misuse of precedent, it cites *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975) for the proposition that for jurisdictional purposes the concept of "tortious act" embraces injury, and that for long-arm purposes the tort situs is where the injury occurs. That general proposition was applied in *Honeywell* to subject a foreign patent infringer to suit where it had induced infringement in Illinois. But Illinois itself has since made plain that mere economic

■ As for "direct effect," Magnus seeks to read that requirement as though mere economic impact on a United States party, caused by a foreign government's actions on its own soil, were enough to subject the foreign sovereign to suit here. That construction of course would prove too much: It would eliminate sovereign immunity altogether, for all the United States plaintiff would have to show would be *damages* caused by the alleged wrongful conduct of the foreign government in its own territory. Due process constraints preclude such a broad sweep against *private* litigants (see e.g., *State Security Insurance Co. v. Frank B. Hall & Co.,* 530 F.Supp. 94, 98–100 (N.D.Ill.1981)),[4] and it would be anomalous indeed if a foreign nation could be haled into court here on so slender a connection when a non-sovereign could not.

Not surprisingly, that has been the courts' approach to tort litigation sought to be carried on in the United States against foreign governments. *Harris,* 481 F.Supp. at 1064–65; *Upton v. Empire of Iran,* 459 F.Supp. 264 (D.D.C.1978), *aff'd mem.,* 607 F.2d 494 (D.C.Cir.1979); *Verlinden B.V. v. Central Bank of Nigeria,* 488 F.Supp. 1284, 1298 (S.D.N.Y.1980), *aff'd on other grounds,* 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Among the other inapplicable opinions Magnus seeks to reshape into authority purportedly supporting its position is *Carey v. National Oil Corp.,* 592 F.2d 673 (2d Cir.1979) (per curiam), a case that in fact supports Argentina and the conclusion reached in this opinion.

■ Accordingly Magnus has not established the predicate for suing Argentina under the Act. This action is dismissed.[5]

impact in this state is insufficient to subject the out-of-state actor to suit here. *Green v. Advance Ross Electronics Corp.,* 86 Ill.2d 431, 438–39, 56 Ill.Dec. 657, 661–62, 427 N.E.2d 1203, 1207–08 (1981) (distinguishing *Honeywell* on that very ground).

**5.** Magnus included Aerolineas in the Complaint even though this Court had previously entered final judgment on its action against the airline. Accordingly the joinder of Aerolineas is barred

by claim preclusion (res judicata). As for Bank, it has been dismissed out with prejudice pursu- ant to a June 25, 1985 stipulation with Magnus.