### MAGNUS ELECTRONICS, INC., Plaintiff,

v.

### ARGENTINE REPUBLIC, Defendant.

### No. 85 C 10557.

United States District Court, N.D. Illinois, E.D.

Sept. 12, 1986.

---

Scott A. Brainerd, Chicago, Ill., for plaintiff.

Gordon B. Nash, Jr., Chicago, Ill., Bruno A. Ristau, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's May 7, 1986 memorandum opinion and order ("*Magnus II*," 637 F.Supp. 487) dismissed this second action brought by Magnus Electronics, Inc. ("Magnus") arising out of its having been cheated out of the purchase price of goods bought by Alfredo DiLullo ("DiLullo")— this time Magnus had sought to recover its loss via a direct action against the Argentine Republic ("Argentina"). *Magnus II*, 637 F.Supp. at 495 concluded with a directive to Magnus' counsel to address the question whether the burden of Argentina's attorneys' fees should be shifted to Magnus under Fed.R.Civ.P. ("Rule") 11.

Magnus' counsel has responded with an "Investigative Report of Plaintiff's Counsel Pursuant to F.R.C.P. 11" ("Magnus Mem."). This opinion treats with the Rule 11 issue in light of counsel's submission (and of course it assumes familiarity with *Magnus II*, thus avoiding the need for any significant degree of repetition).

At the outset it should be emphasized:

1. Argentina is the sole defendant in this second action.

2. If suit is to lie against Argentina, it must be grounded on one of two provisions of the Foreign Sovereign Immunities Act (the "Act"), the first and third clauses of 28 U.S.C. § 1605(a)(2) ("Section 1605(a)(2)"), which strip away sovereign immunity only if "the action is based upon":

> (a) "a commercial activity carried on in the United States by" Argentina; or

> (b) "an act outside the territory of the United States in connection with a commercial activity of [Argentina] elsewhere and that act causes a direct effect in the United States."

Much of counsel's responsive submission goes to show his extensive pre-litigation investigation that may have established Magnus was defrauded of its sale price— and indeed defrauded by Argentina.[1] But

---

1. It is worth noting, however, that most if not all the critical information in that respect was already in hand when Magnus' *first* action, 84 C 7630, was brought. By the time Magnus filed its Second Amended Complaint in that action (following this Court's three opinions reported beginning at 611 F.Supp. 436), Magnus was really in a position to have asserted virtually everything now tendered. Instead the new material was presented substantially later (see the fourth and last published opinion in the 1984 lawsuit, *Magnus Electronics, Inc. v. Royal Bank of Canada*, 620 F.Supp. 387, 388 n. 1 (N.D.Ill.1985) ("*Magnus I*")).

all that is really beside the mark, except to the extent (if any) it shows a bona fide basis for suing Argentina *in the United States* rather than for suing it at all: After all, the essence of sovereign immunity is that absent consent (or implied consent) a sovereign cannot be held liable even for its acknowledged wrongs. Accordingly Magnus' current submission will be viewed from that perspective alone.

As for the first clause of Section 1605(a)(2), it will be assumed (purely arguendo) that Magnus' counsel had enough information before bringing this action to support a reasonable alter-ego allegation as between Argentina and its wholly-owned airline, Aerolineas Argentinas ("Aerolineas").[2] But even on that assumption, under which delivery of Magnus' goods to Aerolineas in the United States for shipment into Argentina would somehow be ascribed to Argentina itself, it could not conscientiously be asserted by Magnus' counsel that its cause of action—which stems from the Argentine Air Force's and Aerolineas' allegedly conspiratorial activity *solely in Argentina* —could be "based upon" Aerolineas' "commercial activity" *in the United States.* See *Magnus II,* 637 F.Supp. at 492–94, discussing the statutory "based upon" standard.

As for the third clause of Section 1605(a)(2), that provision requires Magnus' action to have been based upon an action outside of this country "in connection with a *commercial* activity" of Argentina elsewhere, which act has caused "a direct effect in the United States." Again this opinion will make an arguendo assumption most favorable to Magnus' counsel [3]: that res judicata principles based on *Magnus I* would not apply to bar Magnus' reassertion of its claim.

Even on that most favorable premise, however, nothing in Magnus' current submission exculpates its counsel from Rule 11's application. This Court's opinion dismissing Magnus' first lawsuit, *Magnus I,* 620 F.Supp. at 390 tells precisely why Magnus could find no refuge in that branch of Section 1605(a)(2) in any event.[4] And none of the added investigative facts in Magnus' current submission makes any of that reasoning inapplicable. Even if Magnus' conspiracy theory were accepted, its claim is still "based upon" Argentina's "wrongful[ ] sidetrack[ing of] that commercial transaction by intercepting the goods before they reached their rightful destination" (*Magnus I, id.* at 390) and *not* "based upon" the "commercial activity" itself. Finally, what this Court said in *Magnus I, id.* as to the "direct effect" question is of course not at all impacted by any of the new matters Magnus' counsel now advances.

In sum, Magnus' counsel has shown a good deal of earnest and productive effort (most of it preceding *Magnus I*) spent in investigating, and very possibly establishing, a sound basis for suing Argentina. But the critical question is not the existence or nonexistence of wrongful conduct on the part of that foreign nation, but rather whether Magnus had any basis for saying Argentina had to answer for the consequences of those allegedly wrongful actions in a United States court. And on that score, Magnus' counsel has not shown the colorable objective satisfaction of the standard imposed by Rule 11. In accordance with *Magnus II,* 637 F.Supp. at 494–95, this Court determines Rule 11 liability extends to all of counsel's conduct in bringing this action.

As always in fee-award cases, the interests of the litigants will best be served by minimizing the areas of factual dispute

---

**2.** As an examination of Magnus Mem. 5–7 shows, that arguendo assumption really gives Magnus the benefit of substantial doubts.

**3.** As with the situation referred to in n. 2, an examination of Magnus Mem. 1–7 again reflects the doubtfulness of that assumption.

**4.** Rather than repeating (or seeking to rephrase) the squarely applicable holdings of *Magnus I,* this Court simply attaches a photocopy of 620 F.Supp. at 390 to this opinion as a statement of its reasoning.

(and thus avoiding the pyramiding of fees on fees). Accordingly this matter is set for a status hearing October 23, 1986 at 9:15 a.m. That deferred schedule should (1) enable Argentina's counsel promptly to provide Magnus' counsel with a detailed statement of proposed fees (reflecting the time entries from counsel's records and the applicable hourly rate or rates) and then (2) allow the parties to review and discuss that proposal. At the status hearing this Court will ascertain what matters may require an evidentiary hearing and will establish appropriate procedures.

consequence of the fact that, by its own description of the transaction, it "was of a commercial nature, [Magnus] sending goods to an Argentine buyer [DiLullo] in a regular, for-profit commercial transaction" (Magnus Mem. 7). *Argentina* was not in that conceded "commercial activity"—indeed Magnus' grievance is that Argentina wrongfully sidetracked that commercial transaction by intercepting the goods before they reached their rightful destination. Magnus simply cannot force its lawsuit based on that allegedly tortious conduct (an act of international piracy, as Magnus would have it) into the mold of "commercial activity of a foreign state."

■ That common sense meaning of "commercial activity" comports with the gravamen of the Section 1605(a)(2) exception. As *Harris v. VAO Intourist, Moscow*, 481 F.Supp. 1056, 1064 (E.D.N.Y.1979) put it:

As it is used in section 1605(a)(2), "commercial activity" is meant to distinguish activity which results from what in our society would be termed governmental, public or sovereign enterprises—e.g., running police departments or parks—from those resulting from the acts of foreign state agencies or instrumentalities acting in what we would deem a commercial capacity—e.g., operating hotels or cruise ships. *See Yessenin-Volpin v. Novosti Press Agency, Tass*, 443 F.Supp. 849 (S.D.N.Y.1978).

For better or worse, governmental expropriation of private property is the paradigmatic instance of activity coming under the first rubric and not the second. Whatever else Argentina's alleged conduct may be termed, it is *not* "commercial activity."

4. In an instance typical of Magnus' misuse of precedent, it cites *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir.1975) for the proposition that for jurisdictional purposes the concept of "tortious act" embraces injury, and that for long-arm purposes the tort situs is where the injury occurs. That general proposition was applied in *Honeywell* to subject a foreign patent infringer to suit where it had induced infringement in Illinois. But Illinois itself has since made plain that mere economic

■ As for "direct effect," Magnus seeks to read that requirement as though mere economic impact on a United States party, caused by a foreign government's actions on its own soil, were enough to subject the foreign sovereign to suit here. That construction of course would prove too much: It would eliminate sovereign immunity altogether, for all the United States plaintiff would have to show would be *damages* caused by the alleged wrongful conduct of the foreign government in its own territory. Due process constraints preclude such a broad sweep against *private* litigants (see e.g., *State Security Insurance Co. v. Frank B. Hall & Co.*, 530 F.Supp. 94, 98–100 (N.D.Ill.1981)),[4] and it would be anomalous indeed if a foreign nation could be haled into court here on so slender a connection when a non-sovereign could not.

Not surprisingly, that has been the courts' approach to tort litigation sought to be carried on in the United States against foreign governments. *Harris*, 481 F.Supp. at 1064–65; *Upton v. Empire of Iran*, 459 F.Supp. 264 (D.D.C.1978), *aff'd mem.*, 607 F.2d 494 (D.C.Cir.1979); *Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284, 1298 (S.D.N.Y.1980), *aff'd on other grounds*, 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Among the other inapplicable opinions Magnus seeks to reshape into authority purportedly supporting its position is *Carey v. National Oil Corp.*, 592 F.2d 673 (2d Cir.1979) (per curiam), a case that in fact supports Argentina and the conclusion reached in this opinion.

■ Accordingly Magnus has not established the predicate for suing Argentina under the Act. This action is dismissed.[5]

impact in this state is insufficient to subject the out-of-state actor to suit here. *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 438–39, 56 Ill.Dec. 657, 661–62, 427 N.E.2d 1203, 1207–08 (1981) (distinguishing *Honeywell* on that very ground).

5. Magnus included Aerolineas in the Complaint even though this Court had previously entered final judgment on its action against the airline. Accordingly the joinder of Aerolineas is barred