**MAGNUS ELECTRONICS, INC.,**
**Plaintiff-Appellant,**

v.

**LA REPUBLICA ARGENTINA,**
**Defendant-Appellee.**

No. 86–1789.

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1987.

Decided Sept. 8, 1987.

Scott A. Brainerd, Brainerd & Bridges, Chicago, Ill., for defendant-appellee.

Bruno A. Ristan, Kaplan, Russin & Vecchi, Washington, D.C., for plaintiff-appellant.

Before BAUER, Chief Judge, CUDAHY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Magnus Electronics, Inc. ("Magnus") sued the Argentine Republic ("Argentina") for damages for converting Magnus' goods. The district court dismissed the complaint on the basis of res judicata and lack of subject matter jurisdiction, Fed.R. Civ.P. 12(b)(1). *Magnus Electronics, Inc. v. Argentine Republic*, 637 F.Supp. 487, 496 (N.D.Ill.1986) (*"Magnus II"*). The court also sanctioned Magnus under Rule 11 of the Federal Rules of Civil Procedure. *Magnus Electronics, Inc. v. Argentine Republic*, 112 F.R.D. 141 (N.D.Ill.1986). Magnus appeals the dismissal of its complaint as well as the assessment of fees. We conclude that res judicata bars Magnus from maintaining this suit. We also remand the case to allow the district court an opportunity to reconsider its decision to sanction Magnus under Rule 11. Magnus and Argentina each request that this court sanction the other party under Rule 38. Fed.R.App.P. 38. We decline both invitations.

## I.

This case has had a long and tortured life in the district court and has resulted in a number of opinions from that court. We discuss here only those facts necessary for purposes of this appeal; curious readers can turn to the opinions of the district court for further information.[1] The facts

---

1. *Magnus Electronics, Inc. v. Royal Bank of Canada,* 611 F.Supp. 436 (N.D.Ill.1985) (three separate opinions are reported at this citation); *Magnus Electronics, Inc. v. Royal Bank of Canada,* No. 84 C 7630, mem. op. (N.D.Ill. May 10, 1985) [Available on WESTLAW, DCT database];

*Magnus Electronics, Inc. v. Royal Bank of Canada,* 620 F.Supp. 387 (N.D.Ill.1985); *Magnus Electronics, Inc. v. Argentine Republic,* 637 F.Supp. 487 (N.D.Ill.1986); *Magnus Electronics, Inc. v. Argentine Republic,* 112 F.R.D. 141 (N.D. Ill.1986).

as related here are taken from Magnus' complaint. Under the well-pleaded complaint rule, we take these allegations as true for the purpose of considering the propriety of the district court's dismissal of this suit.

In October 1981, Magnus entered into a contract to sell generators to Alfredo Di-Lullo, a resident of Argentina. Complaint ¶ 2, Record No. 1. DiLullo bought the goods for resale to the Argentine government pursuant to an award of a contract he had received as low bidder in a competitive bidding process. *Id.* ¶ 3. Under the sales contract, Magnus was to deliver the goods to the Royal Bank of Canada (the "RBC") as consignee in Buenos Aires. The RBC was to deliver the generators to DiLullo upon payment of the purchase price. *Id.* ¶ 4. Magnus hired a freight-forwarder to ship the goods from Chicago to Miami. *Id.* ¶ 5. In Miami, Aerolineas Argentinas ("AA") took possession of the generators and transported them to Buenos Aires in November 1981 under an airway bill that designated the RBC as sole consignee. *Id.* ¶¶ 5, 7. After the goods arrived in Buenos Aires, agents of AA and the Argentine Air Force conspired together to seize the goods without making payment. *Id.* ¶ 8. At least one document was forged by an AA agent to facilitate the conversion. *Id.*

The disappearance of its generators precipitated a number of suits by Magnus. Magnus first sued AA and RBC for breaching their obligations to Magnus. The district court dismissed the complaint as to AA because Magnus' claims were barred by the two-year statute of limitations provided in the Warsaw Convention. *Magnus Electronics, Inc. v. Royal Bank of Canada*, 611 F.Supp. 436 (N.D.Ill.1985). Magnus then brought suit against Argentina, alleging that Argentina fraudulently converted the goods for the benefit of the

Argentine military. The district court dismissed that suit for lack of personal jurisdiction because Magnus improperly served process on Argentina under the Foreign Sovereign Immunities Act of 1976 (the "FSIA").[2] 28 U.S.C. § 1608(a)(3) (1982). The court also held that Magnus' complaint failed to allege subject matter jurisdiction under the FSIA. *Magnus Electronics, Inc. v. Royal Bank of Canada*, 620 F.Supp. 387 (N.D.Ill.1985) (*"Magnus I"*). Magnus claimed that the district court had subject matter jurisdiction over its claim under the last clause of section 1605(a)(2) of the FSIA. Section 1605(a)(2) provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2) (1982). The district court found that Magnus failed to allege both that Argentina was involved in any "commercial activity" in this case and that Argentina's conduct had a "direct effect" in the United States.

Subsequent to the entry of judgment against Magnus, Magnus belatedly filed a motion in which it requested the district court to consider additional facts not asserted in its complaint. The district court ruled on this motion from the bench. The court pointed out that Magnus' motion had to be considered under Rule 60(b),[3] and it

---

**2.** The FSIA established the exclusive means by which foreign countries may be sued in American courts. *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 372 (7th Cir.1985) (per curiam).

**3.** Rule 60(b) provides, in relevant part:

(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.*

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under

found that no grounds had been shown entitling Magnus to relief under that provision. During the course of the hearing on Magnus' motion, the following colloquy took place between the court and the attorney for Magnus, Mr. Brainerd:

THE COURT: And, finally, Rule 15(a) which talks about liberally granting leave to amend—

MR. BRAINERD: Yes.

THE COURT: —isn't applicable when an action is dismissed. It relates to leave being granted liberally and freely before that.

Now, I ruled based on the facts that you had asserted in your third effort at a complaint.

MR. BRAINERD: The second amended?

THE COURT: Yes. [ ] [S]ubject matter [ ] jurisdiction was lacking.

MR. BRAINERD: Yes.

THE COURT: And, I stated the reasons for it.

MR. BRAINERD: Right.

THE COURT: If you want to try again with your other set of facts, I guess you are free to do that because subject matter jurisdiction is not, of course, a determination on the merit[s]. But, you are going to have to do it in the context of filing a lawsuit and serving the Argentine Republic and avoiding the several problems that plagued your efforts the last time around.

MR. BRAINERD: Yes. The second amended complaint I freely admit was less than artfully drafted—

THE COURT: No, it was very artfully drafted. It just didn't get federal jurisdiction. So, you know, there is nothing—

MR. BRAINERD: It didn't contain a lot of essential elements of what I consider to be in the case.

THE COURT: Well, you are free to do that now but not in this lawsuit.

. . . .

THE COURT: All right.

In any event, the reason for the denial of the motion is basically it's a Rule 60(b) motion and you have not asserted the appropriate justifications. And in addition to that there is no prejudice. So that—

MR. BRAINERD: I understand that. It's just that—

THE COURT: —it is denied.

MR. BRAINERD: I just cannot see the waste of time—

THE COURT: It is not a waste of time. You are going to have to do the ground work again anyhow. Okay.

MR. BRAUN [Defendants' counsel]: Thank you.

MR. BRAINERD: Thank you.

*Reprinted in Magnus II*, 637 F.Supp. at 496.

Magnus then filed the present suit against Argentina, again alleging that Argentina had converted its goods and again attempting to invoke the district court's jurisdiction over Argentina under the FSIA. Specifically, Magnus alleged that the district court had jurisdiction under either the first or third clause of section 1605(a)(2);[4] Magnus claimed that its suit was based on Argentina's commercial activity in the United States or that it arose from Argentina's commercial activity outside the United States that caused a direct effect in the United States. To overcome the difficulties with subject matter jurisdiction pointed out by the district court in *Magnus I*, Magnus' complaint included a number of allegations respecting the relationship between Argentina, AA and DiLullo. Magnus alleged that Argentina conspired with AA and DiLullo to cause Magnus injury in the United States and that AA was Argentina's "agent," Complaint ¶¶ 7, 10, 11, Record No. 1, "wholly-owned

Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment

should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.
Fed.R.Civ.P. 60(b).

4. *See supra* at 1398 for text of 28 U.S.C. § 1605(a)(2).

instrumentality," *id.* ¶¶ 7, 11, and "alter-ego," *id.* ¶ 7, and that DiLullo was Argentina's "agent," *id.* ¶ 3. The district court held that, under the principles of res judicata, *Magnus I* barred the present suit and, in the alternative, that Magnus' complaint failed adequately to allege subject matter jurisdiction. *Magnus II,* 637 F.Supp. 487. The district court also concluded that Rule 11 sanctions might be appropriate; it ordered Magnus to submit an investigative report detailing the bases for its allegations of subject matter jurisdiction. After considering Magnus' investigative report, the court concluded that Magnus should be sanctioned under Rule 11. *Magnus,* 112 F.R.D. 141.

## II.

The first issue we address is whether Magnus is barred by the doctrine of res judicata from maintaining this suit. Res judicata or claim preclusion

> provides that when a final judgment has been entered on the merits of a case, "[i]t is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2918, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v. County of Sac,* 94 U.S. (4 Otto) 351, 352, 24 L.Ed. 195 (1876)).

It is undisputed that Magnus' complaint here alleges the same cause of action as was alleged in *Magnus I.* In both cases, Magnus claimed that Argentina wrongfully

converted the generators.[5] It is also clear that there is an identity of parties in this suit and *Magnus I.* Magnus argues that res judicata cannot operate to bar the present suit because *Magnus I* does not represent a final judgment on the merits. However, the cases to which Magnus points us do not support its position; in fact, these cases support exactly the opposite conclusion.

Although the district court did not address the merits of Magnus' claim in *Magnus I,*

> the underlying policy of res judicata is not restricted to a valid judgment that deals solely with the merits; it extends to and includes matters in abatement, such as jurisdiction of the subject matter....

1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[5], at 223 (2d ed. 1984) (footnote omitted); *see also Oglala Sioux Tribe of Pine Ridge Indian Reservation v. Homestake Mining Co.,* 722 F.2d 1407, 1411 (8th Cir.1983); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4402, at 11 (1981). A judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in *a court of competent jurisdiction,* 1B *Moore's* ¶ 0.405[5], at 228; however, it does "preclude relitigation of the issue of whether *the first tribunal* had jurisdiction," *Harper Plastics, Inc. v. Amoco Chems. Corp.,* 657 F.2d 939, 943 (7th Cir.1981) (emphasis added) (citation omitted); *see also International Philanthropic Hosp. Found. v. United States,* 223 Ct.Cl. 587, 621 F.2d 402, 405 (1980).[6]

*Magnus I* decided the question whether the district court had subject matter juris-

---

**5.** In fact, in one of the papers that it filed in the district court, Magnus acknowledged that its "instant complaint is a re-filing of [*Magnus I*]." Plaintiff's Response to Defendant's Motion to Dismiss and for Costs and Sanctions, at 1, Record No. 12.

**6.** Magnus quotes the following statement from *Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272 (7th Cir.1983): "A final judgment, however, will have full *res judicata* effect only if it is *on the merits." Id.* at 1277 (empha-

sis in original) (citations omitted). However, a reading of the entire passage from which Magnus quotes cuts against its position. In the sentence immediately following that quoted by Magnus, the *Bunker Ramo* court stated that "[a] dismissal other than one on the merits merely precludes relitigation of the issues decided." *Id.* (citations omitted). The jurisdiction of the district court over the subject matter of this claim under the FSIA was litigated in *Magnus I.*

diction under 28 U.S.C. § 1605(a)(2).[7] The fact that Magnus has now alleged additional facts in its complaint in an attempt to bring its claim within the bounds of section 1605(a)(2) does not affect our conclusion. We do not think that these additional factual allegations should preclude the operation of res judicata when these facts were available to Magnus at the time it filed its complaint in *Magnus I*. *Compare Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75 (5th Cir.1973) (per curiam) *with Dozier v. Ford Motor Co.*, 702 F.2d 1189 (D.C.Cir.1983) (Scalia, J.). In *Mann*, the court held that the prior dismissal of a claim for failure to properly allege diversity jurisdiction did not preclude the plaintiff from refiling the same claim and again attempting to predicate jurisdiction on diversity of citizenship. *Mann*, 488 F.2d at 76. In an extended discussion, *Dozier* adopted a more restrictive exception to the operation of res judicata under such circumstances. *Dozier* held that, if a prior suit was dismissed due to a jurisdictional deficiency, res judicata would bar the refiling of the exact same cause of action unless "the jurisdictional deficiency could be remedied by *occurrences subsequent to the original dismissal.*" *Dozier*, 702 F.2d at 1192 (emphasis in original); *see also GAF Corp. v. United States*, 818 F.2d 901, 912–13 & n. 74 (D.C.Cir.1987).

Neither Argentina nor Magnus even cites *Dozier* or *Mann*, let alone discusses the relative merits of the approach adopted in each of those cases; from our own review of these cases, we think *Dozier* the better reasoned result. Under a system such as that established by the Federal Rules of Civil Procedure, which permits liberal amendment of pleadings, it does not make sense to allow a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements. In

this case, at the time it filed its complaint against Argentina that was ultimately dismissed in *Magnus I*, Magnus was aware of the additional facts that it included in its subsequent complaint in *Magnus II*.

A number of other factors in this case also lead us to the conclusion that the additional factual allegations made by Magnus here should not preclude giving *Magnus I* res judicata effect. Magnus did not file a motion to amend its pleadings in *Magnus I* to add allegations of conspiracy and agency until weeks after judgment had been entered in that case. In addition, the alleged conversion of Magnus' goods has prompted Magnus to bring suit against several different defendants over the course of several years; thus far, Magnus has been unsuccessful in establishing a claim. Each time Magnus lost a round, it came back with a new set of allegations tailored to avoid the deficiencies that the district court pointed out to it in its prior try. In light of this track record, Magnus' bare bones allegations of agency, alter ego, and conspiracy in its latest complaint appear to be "mere verbiage, 'made solely for the purpose of obtaining jurisdiction.'" *Equitable Trust Co. v. Commodity Futures Trading Comm.*, 669 F.2d 269, 273 (5th Cir.1982) (quoting *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Judge Shadur, who has presided over all of Magnus' suits in the district court, was of the same opinion. *Magnus II*, 637 F.Supp. at 493.

Magnus does suggest some reasons why res judicata should not bar this suit; none of these reasons, however, persuades us that res judicata should not apply in this case. First, Magnus argues that res judicata effect should not be given to *Magnus I* because the district court erred there by not considering facts of record which allegedly supported Magnus' theories of subject matter jurisdiction. Magnus specifically complains about the district court's refusal to consider factual allegations contained in

---

7. In *Magnus II*, the plaintiff attempted to base subject matter jurisdiction under the first and third clauses of section 1605(a)(2). In *Magnus I*, the plaintiff formally alleged jurisdiction only under the third clause; the district court, however, specifically considered the applicability of the first clause as well, and it found that subject matter jurisdiction was not established under either provision. *Magnus I*, 620 F.Supp. at 389.

an April 30, 1985 letter written by Magnus' attorney to Judge Shadur; this letter was written in an effort to show that AA had fraudulently concealed Magnus' cause of action, after Judge Shadur had dismissed Magnus' claim against AA on statute of limitations grounds. Judge Shadur refused to consider the letter when he subsequently dismissed *Magnus I* because it was not part of the official record and because Magnus had drafted its second amended complaint in *Magnus I* after having written the letter, without including the assertions contained in the letter in its complaint. In addition to the district court's decision not to consider the April 30, 1985 letter, Magnus also alleges as error the court's refusal to allow Magnus leave to amend its complaint to raise additional theories of subject matter jurisdiction prior to and subsequent to the entry of judgment dismissing the complaint against Argentina.[8]

The objections to the district court's opinion in *Magnus I* that Magnus raises here do not preclude us from giving res judicata effect to that judgment. After the district court dismissed the complaint in *Magnus I,* the plaintiff had two courses of action open to it. Either it could have appealed the decision or it could have sought leave to amend under Rule 15(a) after having the judgment reopened under Rule 59 or 60. *See* 1B *Moore's* ¶ 0.405[3], at 193–94. Magnus pursued the latter route and lost. It could then have appealed the district court's decision to this court. Magnus could not, however, simply file a new suit in district court as it has done and allege new bases of subject matter jurisdiction that were available to it at the time of *Magnus I.*

Magnus also argues that *Magnus I* should not preclude it from relitigating the question of subject matter jurisdiction because the district court gave two independently sufficient reasons for dismissing the first suit: lack of personal jurisdiction and lack of subject matter jurisdiction. This argument is premised on the doctrine of collateral estoppel rather than res judicata. The former doctrine bars the relitigation of issues actually litigated and determined in the original action which were *necessary* to the judgment in that action. Although Magnus raised this argument only in passing and did not attempt to develop it, Magnus apparently is arguing that neither lack of personal jurisdiction nor lack of subject matter jurisdiction was "necessary" for the district court's decision since each basis was independently sufficient to support the result reached by that court. Magnus cites only one case that supports its position, *Halpern v. Schwartz,* 426 F.2d 102 (2d Cir.1970). However, the Second Circuit has since limited *Halpern* to its facts and has endorsed the general rule, which is:

> an alternative ground upon which a decision is based should be regarded as "necessary" for purposes of determining whether the plaintiff is precluded by the principles of *res judicata* or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds.

*Winters v. Lavine,* 574 F.2d 46, 67 (2d Cir.1978); *see also Williams v. Ward,* 556 F.2d 1143, 1154 (2d Cir.), *cert. dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977); 1B *Moore's* ¶ 0.443[5.–2], at 791. No circuit has adopted the unqualified rule advocated by Magnus here, and Magnus has provided us with no adequate reason not to apply the general rule in this case.

Finally, Magnus argues that we should not give res judicata effect to *Magnus I* because it claims that it was "entrapped" by the district court into foregoing its right to appeal and refiling suit instead. Magnus argues that, during the colloquy between its attorney and the district court, the court led it to believe that the dismissal of *Magnus I* would not preclude it from filing a new suit on the same cause of action.[9] We agree with Magnus that

---

**8.** Magnus never filed a formal motion with the court seeking leave to amend before its complaint was dismissed; instead, the plaintiff simply wrote the court a letter requesting leave to amend. Plaintiff's Response to Defendant's Motion to Dismiss and for Costs and Sanctions, at 2 n. 1, Record No. 12; Appellant's Brief at 10 n. 6.

**9.** The relevant portion of this colloquy is reprinted *supra* at 1399.

Judge Shadur's remarks do suggest that, in his opinion, the dismissal of *Magnus I* would not operate as res judicata. We are at a loss to explain the district court's remarks because, as we have already discussed, the disposition of *Magnus I* operates to bar the refiling of this suit.

We do not think, however, that Magnus can preclude the operation of res judicata by relying on the district court judge's characterization of the legal effect of the dismissal of *Magnus I*. Although this may seem a harsh result, several factors lead us to this conclusion. The district court was not purporting to rule on the res judicata effect of *Magnus I* during the colloquy between it and Magnus' counsel nor did the actions of that court in any way preclude Magnus from appealing the dismissal of its complaint. Even after the district court tipped Magnus off to the res judicata issue lurking in this case, Magnus chose to rely on the court's off-the-cuff comments rather than spend a few hours engaging in some basic legal research that would have revealed the very strong possibility that its claim would be barred if it chose to refile rather than appeal. In addition, although it may seem unfair to Magnus to dismiss this suit, it would be even more unfair to Argentina to require it to defend itself once again. One of the fundamental purposes of the doctrine of res judicata is that of repose for litigants. *See* 1B *Moore's* ¶ 0.405[1], at 186. Res judicata protects a victorious party from being dragged into court time and time again by the same opponent on the same cause of action. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); 1B *Moore's* ¶ 0.405[1], at 186; 18 C. Wright, Miller & Cooper, *Federal Practice & Procedure* § 4403, at 11, 14–16. We

therefore conclude that res judicata bars Magnus from maintaining this suit.

### III.

We next consider the decision of the district court to sanction Magnus under Rule 11. Fed.R.Civ.P. 11.[10] The court held Magnus and its attorney jointly and severally liable to Argentina in the amount of $2,895.00. The standard for imposing sanctions under Rule 11 is one of objective reasonableness under the circumstances. *See Brown v. National Bd. of Medical Examiners*, 800 F.2d 168, 171 (7th Cir. 1986). "Under Rule 11 an attorney risks sanctions for failing to make a reasonable inquiry into both the factual and legal basis for the claim he asserts." *Id.* at 171–72; *see also Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1200 (7th Cir.1987). An award of attorneys' fees lies within the discretion of the district court; we review that court's decision to impose sanctions under an abuse of discretion standard. *Brown*, 800 F.2d at 172.

The bases on which the district court awarded sanctions are not entirely clear from its opinions in this case. The court suggested in *Magnus II* that it would impose Rule 11 sanctions because Magnus' claim was precluded "by well-entrenched principles of res judicata." *Magnus II*, 637 F.Supp. at 495. However, in its subsequent opinion issued after Magnus submitted its investigative report, the court stated that, for purposes of Rule 11, it would assume that res judicata would not operate to bar this suit. *Magnus*, 112 F.R.D. at 143. We conclude that, if the district court relied on the res judicata bar to sanction Magnus, a Rule 11 award on

---

**10.** Rule 11 provides, in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or

needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

that basis would constitute an abuse of discretion. The district court did suggest to Magnus' counsel that the dismissal of *Magnus I* would not preclude refiling of its claim. Although we have found that these remarks do not preclude the operation of res judicata, we think that, in light of the court's statements, Magnus should not be sanctioned simply because it refiled this suit.

The district court also sanctioned Magnus because it found that Magnus' allegations of subject matter jurisdiction were not objectively reasonable. *Id.* In its complaint, Magnus alleged that jurisdiction could be premised on either the first or third clause of section 1605(a)(2). Under the first clause of this section, subject matter jurisdiction is established if "the action is based upon a commercial activity carried on in the United States by the foreign state." With respect to this claim, the district court concluded that, even if one accepted the allegation that AA was Argentina's alter ego:

> it could not conscientiously be asserted by Magnus' counsel that its cause of action—which stems from the Argentine Air Force's and [AA's] allegedly conspiratorial activity *solely in Argentina* —could be "based upon" [AA's] "commercial activity" *in the United States.*

*Id.* (emphasis in original). This conclusion flowed from the district court's statement in its decision in *Magnus II* that the plaintiff never asserted "that the United States-based activity of [AA]—accepting the goods for export in Miami at the behest of Magnus' freight forwarder—had as its *premeditated* purpose the later fraudulent conversion of the goods in Buenos Aires, Argentina (thus possibly more nearly satisfying the 'based upon' idea)." *Magnus II,* 637 F.Supp. at 493–94 (emphasis in original). As Magnus points out on appeal, however, it did in fact allege that AA's acceptance of the goods in the United States for transport to Buenos Aires was part of the plot to acquire the generators without payment of the purchase price. *See* Complaint ¶ 8, Record No. 1 (alleging that AA and Argentine Air Force seized goods in Buenos Aires as part of "premedi-

tated" conspiracy); *id.* ¶ 7 (alleging that AA was acting as Argentina's "agent" or "alter ego" in transporting the generators). There is also some support in the case law for a broad reading of the "based upon" requirement advocated here by Magnus. *See, e.g., Sugarman v. Aeromexico, Inc.,* 626 F.2d 270, 272–73 (3d Cir.1980).

The district court's award of sanctions was also based on Magnus' reliance on the third clause of section 1605(a)(2); under this clause, subject matter jurisdiction would be based upon an act outside the United States connected to Argentina's commercial activity elsewhere that causes a direct effect in the United States. The district court concluded that Magnus could not conscientiously assert either that the suit was based upon a "commercial activity" or that there was a "direct effect" in the United States. With respect to the commercial activity prong, the district court stated that Magnus' claim is based upon Argentina's conversion of its goods in Buenos Aires and that this action cannot be described as commercial activity. As for the direct effect point, the district court concluded that Magnus erroneously read this "requirement as though mere economic impact on a United States party, caused by a foreign government's actions on its own soil, were enough to subject the foreign sovereign to suit here." *Magnus I,* 620 F.Supp. at 390, *cited in Magnus,* 112 F.R.D. at 143. With respect to the commercial activity prong, Magnus simply states on appeal that Argentina's alleged ties with DiLullo and AA satisfy this requirement. Magnus focuses here on whether it had an adequate legal basis on which to allege a direct effect in the United States. We agree with Magnus that the question whether economic loss to a United States-based corporation is sufficient to satisfy the "direct effect" prong for purposes of subject matter jurisdiction under the FSIA is not as settled as the district court implied. *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 312 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). Magnus' position that

it suffered a direct effect in the United States does find some support in case law. *See, e.g., Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1111–12 (5th Cir.1985). Although Magnus might not prevail on this issue on the merits, Magnus has shown that it has a colorable legal claim, at least with respect to the "direct effect" issue, which is all it need show to avoid Rule 11 sanctions.

In light of these problems with the reasons offered by the district court to support its decision to sanction Magnus, we cannot affirm this aspect of the judgment. However, in its opinion awarding sanctions, the district court suggested that there might be other bases justifying an award of fees against Magnus. Therefore, we remand this case to give the district court an opportunity to consider other possible reasons for sanctioning Magnus.

### IV.

The final issues we consider are the parties' respective requests for sanctions under Rule 38 of the Federal Rules of Appellate Procedure.[11] Rule 38 allows this court to impose sanctions against a party for filing a frivolous appeal. Argentina requests that we sanction Magnus for pursuing an appeal of a case that was barred by res judicata and for making otherwise unspecified misrepresentations in its brief. Not to be outdone, Magnus has requested that we sanction Argentina for bringing a frivolous motion for sanctions.

We decline to award sanctions to either party in this case. With respect to Argentina's motion, we do not think sanctions are warranted for Magnus' action in pursuing this appeal in the face of a res judicata bar. Although we have concluded that res judicata precludes this suit, the remarks of the district court in dismissing *Magnus I* provided Magnus with a basis for arguing that res judicata should not apply under the circumstances of this case; the district court itself, in dismissing *Magnus II,* felt compelled to address the adequacy of Mag-

nus' allegations of subject matter jurisdiction to avoid even the appearance that Magnus had been entrapped into refiling its suit. In its request for sanctions, Argentina did not enumerate the misrepresentations that it believed would support an award against Magnus. Although Magnus' briefs were not models of clarity, we think that Magnus' confused presentation of the issues in this case was due to its misreading of the relevant case law rather than to an attempt to mislead this court, as Argentina suggests. We also decline to award sanctions against Argentina. Argentina's request for sanctions can hardly be characterized as frivolous in light of the quality of Magnus' briefing of the issues in this case.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

---

11. Rule 38 provides:
  If a court of appeals shall determine that an appeal is frivolous, it may award just damages

and single or double costs to the appellee.