**In re Morris D. KRUMHORN, Debtor.**

**Morris D. Krumhorn, Plaintiff,**

v.

**United States of America, Department of Treasury, Internal Revenue Service Division, Defendant.**

**Bankruptcy No. 98 B 14428.
Adversary No. 98 A 01450.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Jan. 13, 2000.

Eugene Crane, Dannen Crane Heyman & Simon, Chicago, IL, for debtor.

## MEMORANDUM OPINION

RONALD BARLIANT, Bankruptcy Judge.

The Debtor in this chapter 7 case filed this adversary proceeding to determine the dischargeability of tax debts he owes to the United States of America's Department of Treasury, Internal Revenue Service Division ("the IRS"). The IRS asserts that the subject taxes are excepted from discharge because the Debtor wilfully attempted to evade the tax. Judgment will be entered in favor of the IRS.

The Debtor owes the IRS taxes and penalties assessed for the years of 1978, 1981 and 1982. There is no dispute that the Debtor's federal income tax returns for the years of 1978, 1981, and 1982 were due to be filed with the IRS more than three years, including extensions, before the Debtor filed his bankruptcy petition in 1998. It is also undisputed that the Debt-

or filed his federal income tax returns for 1978, 1981 and 1982 more than two years before his bankruptcy filing, and that the IRS assessed the taxes and penalties for these years more than 240 days before the bankruptcy.[1]

The Debtor has therefore established the necessary elements for the discharge of his tax debts under §§ 523(a)(1)(A) and (a)(1)(B) of the United States Bankruptcy Code.[2] The IRS asserts, however, that the Debtor "willfully attempted ... to evade or defeat" his tax obligations. If so, the tax debts are excepted from discharge under § 523(a)(1)(C). Section 523(a)(1)(C) excepts from discharge any tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." Although the IRS argues that the Debtor's tax returns were fraudulent, the Court need not reach that issue because it is established by the tax court decision, discussed below, that the Debtor wilfully attempted to evade the tax.

The IRS rests its entire position on the findings of fact and rulings made by the United States Tax Court in *Krumhorn v. Commissioner of Internal Revenue*, 103 T.C. 29, 1994 WL 374421 (U.S.Tax Ct.1994), which covered the Debtor's tax liabilities for the years of 1978 through

---

1. Although the IRS only admitted the assessment of the 1978 and 1981 taxes more than 240 days before the bankruptcy filing, the notice of federal tax lien states that the 1982 taxes were likewise assessed 240 days before the bankruptcy.

2. Section 523 states, in pertinent part, that
(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
(1) for a tax ...—
(A) of the kind and for the periods specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed; [or]
(B) with respect to which a return, if required—
....
(ii) was filed after the date on which such return was last due, under applicable law

or under any extension, after two years before the date of the filing of the petition.
Section 507(a)(8), in pertinent part, specifies taxes
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; [or]
(ii) assessed within 240 days ... before the date of the filing of the petition....
Unless otherwise indicated, all further statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. In addition, this is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) because it involves the dischargeability of particular debts.

1980, and a settlement stipulation entered in a related tax court case covering the years of 1981 through 1985. The IRS asserts that the Debtor is collaterally estopped from alleging that the tax claim is dischargeable.

■ In order to prevail, the IRS must prove by a preponderance of the evidence that the Debtor "made a fraudulent return or wilfully attempted in any manner to evade or defeat" his tax obligations. *See* 11 U.S.C. § 523(a)(1)(C); *Grogan v. Garner,* 498 U.S. 279, 286–291, 111 S.Ct. 654, 659–661, 112 L.Ed.2d 755 (1991) (a preponderance of the evidence standard applies to § 523(a) actions); *Levinson v. U.S.,* 969 F.2d 260, 265 (7th Cir.1992) (same); *Thorngren v. U.S. (In re Thorngren),* 227 B.R. 139, 142 n. 7 (Bankr.N.D.Ill.1998) (when the IRS affirmatively asserts § 523(a)(1)(C) as a defense to a dischargeability action initiated by a debtor, the burden of proving that the taxes are nondischargeable shifts to the IRS); *In re Sommers,* 209 B.R. 471, 477 (Bankr. N.D.Ill.1997) (same).

■ The Seventh Circuit has explained that "[t]he plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought 'in any manner to evade or defeat' his tax liability) and a mental state requirement (that the debtor did so 'wilfully')." *In re Birkenstock,* 87 F.3d 947, 951 (7th Cir.1996). With regard to the mental state requirement,

the debtor must both (1) know that he has a tax duty under the law, and (2) voluntarily and intentionally attempt to violate that duty. This willfulness requirement prevents application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate.

*Id.* at 952.

■ The doctrine of collateral estoppel, or, more precisely, "issue preclusion", applies in bankruptcy discharge and dis-

chargeability proceedings. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Meyer v. Rigdon,* 36 F.3d 1375, 1378–1379 (7th Cir.1994); *Cohen v. Bucci,* 103 B.R. 927, 929 (N.D.Ill. 1989). For issue preclusion to apply,

four elements must be met: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action."

*Meyer,* 36 F.3d at 1379 (quoting *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990)). While a tax court's decision precludes a debtor from "relitigating the amount of the income tax deficiencies in bankruptcy court, ... this does not impact the dischargeability issues," and "a finding that a tax liability exists is not a finding of fraud or willful evasion for purposes of Section 523(a)(1)(C)." *Sommers,* 209 B.R. at 478. But here there is more than a finding of liability.

In *Krumhorn v. Commissioner of Internal Revenue,* the tax court addressed two issues: "(1) whether ... [the Debtor and his former wife] properly deducted capital losses from purported commodities transactions on their 1978 joint Federal income tax return, and (2) whether ... [the Debtor and his former wife we]re liable for the addition to tax as determined by" the IRS. 103 T.C. 29, 30, 1994 WL 374421 (U.S.Tax Ct.1994). In that case, the IRS had argued, among other things, that the Debtor could not deduct the subject losses because the alleged commodities "transactions never occurred (factual sham), or alternatively, they lacked economic substance (economic sham)." *Id.* at 38, 1994 WL 374421. After examining a number of factors, the tax court ruled in the IRS's favor and held that the Debtor and his former wife had "not carried their burden ... [of] overcom[ing] ... [the IRS's] determination

that ... [the Debtor's] trades ... were factual shams." *Id.* at 46, 1994 WL 374421.[3] The tax court further found that the Debtor and his former wife had "failed to prove that they were not negligent" when they underpaid their taxes and added "to the tax an amount equal to 5 percent of the underpayment." *Id.* at 56, 1994 WL 374421.[4] These holdings are not conclusive in this proceeding in which the IRS, not the Debtor, has the burden of proof, and the issue is fraud or willful evasion, not negligence. Determinative in this case, however, is the tax court's holding "that petitioner's straddle transactions lacked economic substance." *Id.* at 56, 1994 WL 374421.[5]

The tax court first explained that "[e]conomic shams or transactions lacking economic substance are transactions that have actually taken place, but which have no economic significance beyond expected tax benefits," *id.* at 46, 1994 WL 374421, and "'for transactions to be recognized for tax purposes they must have economic substance.'" *Id.* at 48, 1994 WL 374421 (quoting *Lerman v. Commissioner,* 939

F.2d 44, 52 (3d Cir.1991)).[6] The tax court then examined the Debtor's trading activities and found

> that is was ... [the Debtor's] intent from the very beginning to systematically close straddle legs that, in every case, resulted in losses in year one and to move the offsetting gains to subsequent years. Stated differently, the realization of losses in year one was "preordained". This scheme was not necessary or helpful in making a profit.

*Id.* at 53. Hence, the tax court specifically found that the Debtor had intentionally developed a trading scheme for the sole purpose of avoiding his tax obligations. As such, both the conduct and the mental state requirements stated by the Seventh Circuit in *Birkenstock* have been met.

■ The Debtor argues, however, that the tax court's economic sham analysis and holding were not necessary to find against the Debtor and, therefore, cannot preclude him from litigating the wilful evasion issue in this proceeding. The Seventh Circuit rejected the Debtor's position in *Magnus*

---

3. In reaching its decision that the trades were factual shams, the tax court noted the following evidence: (1) "[l]ack of [b]usiness [f]ormalities," (2) "[i]rregularities in [d]ocuments," (3) "[t]ax [m]otivated [t]rading [p]atterns," (4) the existence of "margin payments [that] had no apparent correlation to ... [the commodities broker's] potential risk of loss at the time the payments were made," and (5) the existence of a margin balance "roughly equal to the excess of losses over gains." *Id.* at 39–45.

4. The tax court stated:
   Petitioner[, the Debtor,] did not enter into an account agreement with Comfin, [the commodities broker,] he did not sign any of the contracts as requested and normally required by Comfin, he did not produce complete documentation regarding his account with Comfin, and he failed to explain adequately why he reported a gain from his transactions with Comfin on his Federal income tax returns when, in fact, he appears to have lost $74,-406.33. Petitioner systematically produced losses in 1978 from his dealings with Comfin in order to offset his income from domestic trades and then moved the corresponding Comfin gains to subsequent years. In light of

these factors and our finding that petitioners failed to prove that the trades actually occurred, we find that petitioners have failed to prove that they were not negligent.
   In addition, ... [the IRS's] negligence determination was attributable to the entire deficiency. Petitioners conceded issues unrelated to Mr. Krumhorn's straddle transactions with Comfin. Petitioners did not offer any evidence to show that they were not negligent with respect to the conceded issues, nor did they argue on brief that they were not negligent as to the issues they conceded. We, therefore, sustain respondent's determination. *Id.* at 56–57.

5. In the related tax court case covering the years of 1981 through 1985, the Debtor and the IRS entered into a "Stipulation of Settlement", where the Debtor "agree[d] to be bound by the final decision" of the tax court in *Krumhorn v. Commissioner of Internal Revenue,* 103 T.C. 29, 1994 WL 374421 (U.S.Tax Ct.1994). (IRS Ex. 1 at 2 ¶ 2.)

6. The tax court assumed that the Debtor's trades actually occurred in this part of its analysis. *Id.* at 50, 1994 WL 374421.

*Elec., Inc. v. La Republica Argentina,* 830 F.2d 1396 (7th Cir.1987) where it applied "the general rule, which is: an alternative ground upon which a decision is based should be regarded as 'necessary' for purposes of determining whether the plaintiff is precluded by the principles of res judicata or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds." 830 F.2d 1396, 1402 (7th Cir.1987) (internal quotation marks and citations omitted). Hence, because both parties were fully represented in the tax court cases and the issue of whether the Debtor willfully evaded his tax obligations was actually litigated and essential to the tax court's final judgment that the Debtor's trades lacked economic substance, the Debtor is barred from relitigating the wilful evasion issue here.

In the tax court litigation, the Debtor was found to have wilfully evaded his tax obligations by intentionally engaging in trading activity devoid of any economic substance. As such, the doctrine of collateral estoppel precludes the Debtor from relitigating this issue in this Court, and the Debtor's tax debt to the IRS is therefore nondischargeable under § 523(a)(1)(C).