**R.K. HARP INVESTMENT CORP.,**
**Plaintiff-Appellant,**

v.

**James McQUADE and Donald Cobb,**
**M.D., Defendants-Appellees.**

**No. 86–2150.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1986.

Decided June 23, 1987.

Rehearing Denied July 15, 1987.

R. Kymn, Harp, Regas, Fredzados & Harp, Chicago, Ill., for plaintiff-appellant.

Stephen R. Swofford, Hinsahw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, COFFEY and EASTERBROOK, Circuit Judges.

BAUER, Chief Judge.

The plaintiff-appellant, R.K. Harp Investment Corp. ("Harp"), appeals the district court's denial of a Rule 11 motion, Fed.R.

Civ.Pro. 11, seeking attorneys' fees in excess of $37,000 from the defendants-appellees, James McQuade and Donald Cobb. Harp's Rule 11 motion was filed following the district court's denial of the appellees' motion and subsequent amended motion to set aside a prior default judgment entered in the case. For the reasons which follow we affirm the district court's denial of Rule 11 sanctions.

This controversy began with an art collection known as the James Paul Delaney Collection of Art. The Delaney Collection was the subject of a perfected security interest governed by a document referred to as the "Amended Intercreditor and Security Agreement." This agreement purported to grant a security interest in the art collection to numerous creditors, entitling each to receive a portion of the proceeds upon its sale. Harp was an owner, by assignment, of such an interest entitled to receive $200,000 upon the sale of the art collection.

The underlying case initially brought before the district court centered upon whether the defendants had purchased the art collection pursuant to a Memorandum of Understanding executed on March 30, 1983. If a sale actually took place, it would have activated Harp's right to payment under the Amended Intercreditor and Security Agreement, thus obligating the defendants to pay Harp according to its interest. The defendants maintained that the Memorandum of Understanding merely reflected preliminary negotiations and was not a binding contract.

Contrary to the defendants' assertions, however, shortly after the Memorandum of Understanding was executed, the defendants received bills of sale conveying to them the individual works of art comprising the collection. Moreover, they executed a formal "Notice" directed to the custodian in possession of the art work, explicitly stating that they were the new owners of the Delaney Collection.

Subsequently, Carl Stacey, a large creditor with a security interest in the collection, objected to the sale claiming that it was a breach of the Amended Intercreditor and Security Agreement. At a meeting involving Stacey's attorneys and the defendants, a document entitled the "Cash Out Intercreditor Security Agreement" was executed in which the defendants purportedly bought only the security interest of certain secured creditors who held a lien against the collection. Thus, because the defendants did not actually purchase the collection itself, Harp's right to payment was not activated pursuant to the Amended Intercreditor and Security Agreement. Harp claimed that the "Cash Out" agreement was a sham designed to avoid paying Harp the funds it was entitled to receive.

On May 2, 1983, Harp filed suit in the United States District Court. Though defendant Cobb was personally served with a summons and complaint, he failed to respond and a default judgment was entered against him on September 6, 1983. Thereafter, sixteen garnishment summonses were directed against the assets of Cobb. Defendant McQuade was served with an alias summons and complaint on January 27, 1984. A default judgment was entered against him for failure to appear or plead on March 6, 1984.

Initially, Cobb contacted Truman Gibson, an attorney who had been involved in the purported sale of the Delaney Collection. Though it is unclear whether the defendants actually retained Gibson to represent them, he did render his advice about Harp's action on several occasions. On July 16, 1984, the defendants, through their new attorney Stanley L. Hill, filed a motion to set aside default judgments. Following 16 months of discovery, Judge Getzendanner denied the motion. An amended motion to set aside default judgments was filed by the defendants and subsequently denied by the court.

On March 12, 1986, Harp filed its motion for Rule 11 sanctions. On July 2, 1986, the court denied Harp's motion finding: (1) that the existence of the "Cash Out" agreement and the defendant's stated belief as to the effect of that agreement provided some factual support for their assertion of a good faith defense to Harp's claim, particularly when under the time pressures of

filing a prompt motion to set aside default judgments; and (2) that there was a sufficient factual basis to support the assertion that the defendants did not unduly delay in seeking to set aside the default judgments where the defendants offered a "vague" explanation that they were relying on Truman Gibson to defend the action.

## I.

Pursuant to Fed.R.Civ.P. 11, every pleading or other document submitted to the court must be signed and is deemed to certify that the person so signing "has read the ... paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R. Civ.P. 11; *see also Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986); *In Re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985). If a document is submitted in violation of this rule, "the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party or both, an appropriate sanction, which may include" attorneys' fees. Fed.R.Civ.P. 11; *see also American Security Vanlines, Inc. v. Gallagher*, 782 F.2d 1056 (D.C.Cir.1986); *Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir.1986).

■ However, the imposition of sanctions must be divorced from the ultimate disposition of the underlying action. *Frazier v. Cast*, 771 F.2d 259 (7th Cir.1985); *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 451 n. 13, 102 S.Ct. 1162, 1166 n. 13, 71 L.Ed.2d 325 (1982). Moreover, because the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position

reasonable in light of the facts and governing law is reversible only where there has been an abuse of discretion. *Frazier v. Cast*, 771 F.2d at 262–263; *Gieringer v. Silverman*, 731 F.2d 1272, 1281 (7th Cir. 1984); *Warren v. Reserve Fund, Inc.*, 728 F.2d 741, 748 (5th Cir.1984); *but see Shrock v. Altru Nurses Registry*, 810 F.2d 658 661 (7th Cir.1987) (once a judge determines that a Rule 11 violation occurred statute requires that sanctions "shall" be imposed). Thus, our review is extremely limited, particularly given the factual basis of Harp's claim.

## II.

■ Initially, we are confronted with the question of whether the defendant's motion to set aside default judgments was well-grounded in fact. Several factors support the district court's finding that a sufficient factual basis existed for the defendants' claim that they never purchased the art collection. The Memorandum of Understanding executed by the defendants on March 30, 1983, for example, appears to contemplate something less than a final and binding agreement.[1] Additionally, the Cash Out Intercreditor Security Agreement dated April 20, 1983, purports to convey only the secured interest of creditors holding a lien on the Delaney Collection and not the art work itself. Finally, the district court could reasonably conclude that Attorney Hill was entitled to rely on his client's understanding of the April 20, 1983 agreement given the relative time constraints for filing a motion to set aside default judgments. *See* Fed.R.Civ.P. 11 Advisory Committee's Note ("What constitutes a reasonable inquiry may depend upon such factors as how much time for investigation was available to the signors; [or] whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper...."); *see also Dist. No. 8, Intern. Ass'n of Mach., etc. v. Clearing*, 807 F.2d 618, 622 (7th Cir.1986) (an attorney does not violate Rule 11 by relying on

1. The Memorandum states: "Whereas, Cobb and McQuade desire to arrange for the purchase

of such art collection."

representations of a client, even where the court refuses to credit those representations at trial).

Because the appellant would draw a different line in determining what was objectively reasonable, it implausibly contends that the district court improperly applied a subjective bad faith test in determining whether Rule 11 sanctions were appropriate. *See In Re TCI, Ltd.,* 769 F.2d at 450 ("Litigation must be grounded in an objectively reasonably view of the facts and the law" and not the signor's subjective belief in the validity of a claim.) We can find no merit in this argument. Nothing in the court's opinion even suggests that such a standard was employed.

### III.

■ Next, we turn to Harp's request for sanctions premised on the defendants' delay in seeking to set aside the default judgments. Predicated on what it describes as defendants' "vague" explanation that they were relying on their prior attorney, Truman Gibson, to defend the action, the district court declined to impose sanctions for the defendants' delay. Though this cryptic summation of the defendants' explanation for the delay appears to belie the court's refusal to impose sanctions, the record before us adequately supports such a denial.

While it is unclear whether the defendants actually retained Gibson to represent them against Harp's claim prior to and after the entry of the default judgments, it appears that Gibson acted as the defendants' attorney in-fact. When defendant Cobb initially contacted Gibson upon being served with both the summons and complaint, Gibson assured Cobb that everything would be "taken care of." Moreover, although Gibson informed the defendants that Harp was actively proceeding with its claim after the entry of the default judgment, he reassured Cobb that settlement with Carl Stacey was imminent and would thereby render Harp's claim moot. Given these facts we cannot conclude that the trial court abused its discretion in refusing to impose Rule 11 sanctions.

For the foregoing reasons the judgment of the district court is

AFFIRMED.