**FEDERAL DEPOSIT INSURANCE CORP., a federal corporation and successor in interest to Continental Illinois National Bank and Trust Company of Chicago, Plaintiff–Appellee,**

v.

**TEKFEN CONSTRUCTION AND INSTALLATION COMPANY, INC., Defendant–Cross/Plaintiff–Appellant,**

v.

**SANGAMO CONSTRUCTION COMPANY, R.B. Potashnick Construction, Inc., and R.B. Potashnick, Cross/Defendants.**

No. 87–2105.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1988.

Decided June 1, 1988.

J. Robert Geiman, David J. Novotny, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant-cross/plaintiff-appellant.

Paul K. Vickrey, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUDAHY, Circuit Judge:

Appellant asks us to vacate an award of attorneys fees under Fed.R.Civ.P. 11. Defendant Tekfen Construction and Installation Company ("Tekfen"), a Turkish corporation, was a partner in Sangamo Group, a partnership whose other members were American construction firms. The partnership was formed to build a Kuwaiti reser-

voir. Sangamo Group obtained a letter of credit, apparently backed by the partnership's guarantee and collateral, from Continental Illinois National Bank and Trust Company of Chicago ("Continental") to help finance the project. Later Continental made payment on the letter of credit. Continental's successor in interest, the Federal Deposit Insurance Corporation (the "FDIC"), brought this action to obtain reimbursement from Sangamo Group and its partners. The FDIC eventually prevailed as to all defendants and the parties settled as to liability while this appeal was pending. One issue is still before us. Judge Norgle granted the FDIC's motion for Rule 11 sanctions against Tekfen and awarded $2,418.50 in attorney's fees. Tekfen says that determination was improper.

## I.

A brief discussion of the case's procedural development is necessary. The judge sanctioned Tekfen for an argument first made in response to a summary judgment motion brought against it by the FDIC to establish Tekfen's liability on the letter of credit. On April 18, 1986, Tekfen filed a motion to stay briefing of the summary judgment motion pending the completion of certain discovery. Tekfen's theory of the case was that the American Sangamo Group partners individually obtained the Continental letter of credit or, in the alternative, that even if Sangamo Group entered the agreement, Tekfen was not bound by that agreement. The letter of credit application was never produced. Tekfen argued that the American partners agreed that Tekfen, due to technical Turkish legal difficulties, would obtain a separate letter of credit. Tekfen alleged that even if Sangamo Group applied for the Continental letter, it had no authority to do so on behalf of Tekfen, and that if Continental knew that fact Tekfen was not bound.[1] Tekfen contended that discovery, including depositions of Continental's representatives in the dealings, would prove either that Sangamo Group was not the

applicant or that Continental knew Tekfen was not bound by the agreement.

The court initially granted Tekfen's motion and deferred consideration of summary judgment until Tekfen had a chance to complete limited discovery. On June 13, 1986, the court reconsidered that decision in light of the Sangamo Group Partnership Agreement, produced that morning by another defendant. The court rescinded its prior order and denied the motion for stay. Thus, Tekfen was never allowed to complete discovery to support its theory of the case.

On June 18, 1986, the FDIC filed a motion for Rule 11 sanctions against Tekfen. The motion requested $2,418.50 in fees and expenses incurred in contesting Tekfen's motion for stay. The motion alleged that Tekfen's counsel "was well aware that his arguments ran counter to not only a binding agreement signed by his client, but elementary principles of law as well." FDIC's Motion for Sanctions at 5 (June 18, 1986). The FDIC contends that the Partnership Agreement rendered Tekfen's arguments frivolous and contrary to principles of partnership law.

The court did not immediately rule on the sanctions motion. Several months later, the court granted the FDIC's summary judgment motion. *FDIC v. Sangamo Group*, No. 85 C 285 (N.D.Ill. April 29, 1987). With respect to Tekfen's argument that Sangamo Group lacked authority to bind Tekfen, the court stated:

> [Tekfen] argues Continental had knowledge that no one was authorized to act for Tekfen Construction regarding the Continental Bank letter of credit. Continental's knowledge that Sangamo Group's individual partners lacked the authority to act for the partnership would be sufficient to avoid partnership liability; however, Tekfen fails to establish that knowledge.

*Id.* at 3–4. The court went on to state that Tekfen's "conspicuous" absence from all relevant meetings, the partnership's course of dealings and other factors did not raise a question of fact as to Continental's knowl-

---

1. Tekfen made other arguments as well; none is relevant here.

edge. Likewise, the argument that the partners' conduct revoked the actual authority of the partnership agreement "is also flawed because it fails to establish Continental knew of the individual partner's [sic] changing relationship, if any." *Id.* at 4. Therefore the court granted summary judgment for the plaintiff.

Upon reading this, Tekfen's counsel was understandably perplexed. The court granted summary judgment against Tekfen solely on the ground that the Turkish contractor failed to raise an issue of fact as to Continental's knowledge. Yet by denying Tekfen's motion to allow completion of discovery the court had made it impossible for Tekfen to raise an issue of fact. Tekfen was not a party to the partnership's negotiations with Continental. No Tekfen representative attended any relevant meetings. The only way Tekfen could prove Continental's knowledge that Tekfen was not to be bound was through discovery of the circumstances surrounding the application. Judge Norgle denied discovery that might have supported a defense he recognized as valid. *Id.* at 4 ("Continental's knowledge ... *would* be sufficient to avoid partnership liability.") (emphasis added).

Tekfen filed a motion to reconsider, pointing out the discrepancy in the court's rulings. The court denied the motion, basing the ruling on 12 U.S.C. § 1823(e), which states that no agreement that diminishes the FDIC's interest in an asset is valid unless certain requirements are met.[2] The court had never before intimated that this section foreclosed Tekfen's defense, although it had granted summary judgment against another defendant on this basis. We need not decide whether section 1823(e) applies on the facts of this case because that section was not a basis of the sanctions.

Rather, when the district court denied Tekfen's motion to reconsider, it separately granted the sanctions motion. It stated that "[d]espite numerous rulings of the court to the contrary, Tekfen has persisted in its theory that it is not bound under the letter of credit." *FDIC v. Sangamo Group,* No. 85 C 285, mem. op. at 7 (N.D. Ill. June 12, 1987). The court held that the Partnership Agreement rendered Tekfen's arguments "clearly frivolous." *Id.* at 9. Judge Norgle found that Tekfen persisted in arguments after the court rejected those arguments, and he awarded fees "incurred in responding to the frivolous arguments of Tekfen." *Id.* at 10.

Tekfen appeals, and the FDIC asks for Rule 38 sanctions.

## II.

Rule 11 states that when a lawyer or party signs a document, that person certifies that:

> to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....

Fed.R.Civ.P. 11. The test is one of objective reasonableness under all the circumstances of the case. *See Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1403 (7th Cir.1987); *Brown v. National Bd. of Medical Examiners,* 800 F.2d 168, 171 (7th Cir.1986) ("*Brown I*").

The standard of review in Rule 11 cases is a matter of disagreement among the circuits. *See Thomas v. Capital Sec. Serv.,* 836 F.2d 866 (5th Cir.1988) (en banc)

---

**2.** Section 1823(e) reads:
(e) Agreements against interests of Corporation
　No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

(discusses at length Rule 11 and conflicting standards; adopts abuse of discretion standard). Our own opinions have not always been models of clarity on this point. The FDIC says we should reverse only for an abuse of discretion. Brief of Plaintiff–Appellee at 9. It cites *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir. 1987), which applies the abuse of discretion standard "because the trial court alone has an intimate familiarity with the relevant proceedings." *Id.* But other panels have applied one of two mutually inconsistent two-pronged tests. *Compare In re Ronco*, 838 F.2d 212, 217 (7th Cir.1988) *with Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1434 (7th Cir.1987) (*"Brown II"*). In both of these cases, and numerous others, the court reviewed factual determinations underlying the award under the "clearly erroneous" standard. *See Ronco*, 838 F.2d at 217; *Brown II*, 830 F.2d at 1434; *see also Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987). After that consensus step, the panels part ways. In *Ronco* we said the final legal determination that sanctions are proper is reviewable only for an abuse of discretion. *Ronco*, 838 F.2d at 217 (citing *Ordower*, 826 F.2d at 1574). In *Brown II*, on the other hand, we held that "the district court's legal conclusion that conduct in a particular case constitute[s] a violation of Rule 11" is reviewable *de novo. Brown II*, 830 F.2d at 1434 (citing *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987)).

*Brown II* noted and attempted to resolve this conflict, 830 F.2d at 1434 n. 3, but later cases have continued to apply differing standards. *See, e.g., Ronco*, 838 F.2d at 217; *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987) ("deferential standard"). *Cf. Flip Side Prods., Inc. v. JAM Prods., Inc.*, 843 F.2d 1024, 1035–36 (7th Cir.1988) (applying a three-pronged test). Putting in our two cents, we find persuasive the reasoning of *Central Ice Cream.* Sanctions are ultimately a "judgment call." *Central Ice Cream*, 836 F.2d at 1072. As the *Brown I* court noted, 800 F.2d at 171, the standard is reasonableness under all the circumstances, and those circumstances are best divined by the district court. While some factual findings may be subject to "clearly erroneous" review, *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985), in general, the ultimate finding regarding sanctions should receive deference and be rejected only if the district court has abused its discretion. Because Rule 11's language is mandatory the district court is not free to decline to enter a sanction after finding a violation of the rule's requirements—and *that* action may be reviewed *de novo. See Ronco*, 838 F.2d at 217 n. 7; *Brown II*, 830 F.2d at 1434 n. 3. Nonetheless, the bulk of the Rule 11 calculus is best left to the trial court.[3]

### III.

We need not attempt to resolve definitively here this circuit's apparent splits for, even under a deferential standard of review, the sanctions were not proper. Judge Norgle found Tekfen's theory of the case to be frivolous. Although the FDIC's sanctions motion was limited to Tefken's motion for stay pending discovery, the court *sua sponte* granted sanctions for each time the FDIC had to respond to Tekfen's arguments.[4] Tekfen's persistence, perhaps more than the substance of its arguments, led to the sanctions.

Yet Tekfen's persistence is understandable. After all, Judge Norgle apparently accepted its basic legal theory in ruling on summary judgment. *See supra* pp. 441–42. He granted summary judgment not because the theory was unsound but because the defendant failed to raise a question of fact as to Continental's knowledge, a requirement of Tekfen's theory. But Tekfen was unable to raise a question of

---

**3.** Of course, once a violation is found the type and amount of the sanction are reviewable only for an abuse of discretion. *See Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063, 1066 (7th Cir.1987).

**4.** The FDIC requested and received fees only for its time spent fighting the motion for stay, apparently missing the court's invitation to expand the request.

fact in part because the relevant information was in the hands of an opposing party, the bank, and the district court cut off discovery after reviewing the Partnership Agreement. That fact raises a serious question as to the propriety of the sanctions, given that Tekfen's obstinance was merely an effort to alert the court to its own inconsistent rulings.

We may still uphold the sanctions if Tekfen's legal theory is frivolous. The FDIC argues: "Like Arnold Schwarzanegger in the motion picture film 'The Terminator,' Tekfen's attorneys have relentlessly persisted in their mission to destroy fundamental partnership law." Brief of Plaintiff–Appellee at 12. We disagree. The FDIC apparently feels that the Partnership Agreement is irrefutable evidence; it is not. Judge Norgle stated, in ruling on summary judgment, that Tekfen would prevail if it could show that an understanding among the partners or course of conduct revoked the actual authority granted by the Partnership Agreement and that Continental knew of the lack of authority. He accepted this statement as the law of the case. That ruling is sufficient to undercut any contention that the theory is frivolous. The Partnership Agreement does not affect this argument in any way, and sanctions attributable to this Tekfen theory cannot stand.[5]

Judge Norgle alluded briefly to one other potential basis for sanctions: an argument in the motion for stay that the letter of credit application was not for the purpose of carrying on partnership business in the usual way. *See* Memorandum in Support of Motion for Stay at 6–7; *see also* Uniform Partnership Act § 9, Ill.Rev.Stat. ch. 106½, para. 9(2) (1985) ("An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners."). This argument is nothing more than a corollary to Tekfen's central thesis. Tekfen's view of the case, if supported by the facts disclosed by discovery, would show that the application was not an ordinary course transaction.[6]

Tekfen might not have prevailed at trial; in fact, even if discovery had been completed, there is no guarantee Tekfen would have survived a summary judgment motion. But that is not the issue here—the issue is whether Tekfen's theory was frivolous. It was not. As for Tekfen's "tenacious and obstinate indifference" to the court's rulings, it seems to us that what the district court calls overzealousness was well within the bounds of proper representation. The court's rulings were inconsistent; and they were inconsistent in a way that suggests to the reader that Tekfen might prevail on the merits if given the chance to complete discovery. Thus Tekfen's motion to reconsider the summary judgment was appropriate.

## IV.

While the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution. Even where, as here, the monetary penalty is low, a Rule 11 violation carries intangible costs for the punished lawyer or firm. A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter. We may not impugn that reputation without carefully analyzing the legal and factual sufficiency of the arguments. In this case a firm was apparently sanctioned for zealous advocacy in persisting in pointing out what appear to be the court's own inconsistent rulings. The sanctions

---

**5.** It is ironic that Judge Norgle stated, in granting sanctions:

Tekfen did not need to research the law of partnerships to discover the frivolous nature of its arguments. The court itself provided the law in its rulings and those rulings became the law of the case. Tekfen's failure to abide by those rulings constitutes bad faith. *FDIC v. Sangamo Group,* No. 85 C 285, mem. op. at 10 (N.D.Ill. June 12, 1987).

**6.** We also note that even if this minor argument were off the mark, the fact that one argument in an otherwise valid paper is not meritorious "does not warrant a finding that the motion or pleading is frivolous or that the Rule has been violated." *Brown II,* 830 F.2d at 1434 n. 2 (quoting and adopting rule of *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1540–41 (9th Cir.1986)).

must be vacated. The FDIC's request for Rule 38 sanctions is denied.

VACATED.