RETIRED CHICAGO POLICE ASSOCIATION, PLAINTIFF,

v.

FIREMEN'S ANNUITY AND BENEFIT FUND OF CHICAGO, Defendant–Appellee,

Appeal of: Clinton A. KRISLOV, Appellant.

No. 97–2212.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1998.

Decided May 27, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 19, 1998.*

* The Honorable Joel M. Flaum took no part in the consideration of this case.

Clinton A. Krislov (argued), Krislov & Associates, Chicago, IL, John J. Lowrey, Lowrey & Smerz, Chicago, IL, for Plaintiff.

David S. Allen (argued), Jacobs, Burns, Sugarman, Orlove & Stanton, Chicago, IL, for Defendant–Appellee.

Robert J. Stein, III, Krislov & Associates, Chicago, IL, for Appellant.

Before BAUER, KANNE, and DIANE P. WOOD, Circuit Judges.

KANNE, Circuit Judge.

Clinton A. Krislov, attorney for the Retired Chicago Police Association ("RCPA"), appeals the district court's imposition of Rule 11 sanctions with regard to the claim he filed against Firemen's Annuity and Benefit Fund of Chicago ("Firemen's Fund"). Because the district court did not abuse its discretion in sanctioning Krislov, we affirm.

## I. History

This case is an offshoot of matters that have repeatedly appeared before us. *See Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856 (7th Cir.1996) ("*RCPA II*"); *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584 (7th Cir.1993) ("*RCPA I*"). Our previous decisions, as well as a related case brought in Illinois state court, *City of Chicago v. Korshak,* 206 Ill.App.3d 968, 151 Ill.Dec. 797, 565 N.E.2d 68 (1990), contain many of the background facts of this dispute. We review only those facts pertinent to this appeal.

This case originally began as an action by RCPA against the City of Chicago and several city officials (collectively the "City") and the city's four pension funds ("Funds").[1] RCPA sought relief under 42 U.S.C. § 1983 on the grounds that a settlement agreement between the City and the Funds violated provisions of the United States and Illinois Constitutions. RCPA also asserted claims of breach of contract, estoppel, and breach of fiduciary duty.

The settlement was the result of a state declaratory judgment action brought by the city against the Funds, in which the city sought both a declaration that it paid more than it was legally obligated to pay for the health care of its Funds' members and a determination of the city's future obligations. *See City of Chicago v. Korshak,* No. 87 CH 10134 (Chancery Div., Circuit Court Cook County, Dec. 12, 1989). Annuitants of the Funds challenged the fairness of the settlement[2] in state court, hoping to compel the city to continue providing its prelitigation health care coverage and to preclude the city from raising the costs of that coverage. The trial court found the settlement to be fair, and the settlement was affirmed on appeal. *See Korshak,* 151 Ill.Dec. 797, 565 N.E.2d at 72. RCPA was not a party to the state court litigation as its motions to intervene and for class certification were denied.

Undaunted, RCPA filed a class action against the City and the Funds in federal court. RCPA proposed to represent a class consisting of all annuitants from the Funds who had begun participation in the city's Healthcare Annuitant Plan after December 31, 1987 but before August 23, 1989. *See Complaint, Retired Chicago Police Ass'n v. City of Chicago,* No. 90 C 407 (N.D.Ill. Jan. 24, 1990). The claims centered on representations that the City and Funds allegedly made to thousands of city employees, purportedly entitling those employees to free, lifetime, post-retirement health care coverage. RCPA, however, only had evidence of representations made by the Policemen's Fund. To assert claims against the other three funds, RCPA alleged that the annuitants of those funds heard the same promises as members of the Policemen's Fund about the guarantees of free, lifetime health benefits. RCPA argued (1) that the representations were contractual in nature with post-retirement health care constituting a term and condition of employment and (2) even if the representations did not create a contractual obligation, the annuitants relied on the representations to their detriment, thereby equitably estopping the City and Funds from altering the previously existing coverage.

On March 23, 1992, the district court denied RCPA's motion for class certification.

---

1. The four funds are the Policemen's Annuity and Benefit Fund ("police fund"), the Firemen's Fund, Municipal Employees' Annuity and Benefit Fund ("municipal fund"), and the Laborers' and Retirement Board Employees' Annuity and Benefit Fund ("laborer's fund").

2. Under the terms of the settlement, the city and the Funds agreed to cosponsor legislation that would change the Illinois Pension Code. The legislation, which was eventually enacted, increased the amount the Funds would contribute to the health care premiums of their annuitants, required the city to pay at least 50 percent of the costs of the annuitants' health care premiums through 1997, and made the annuitants responsible for paying the remaining portion of their premiums.

See *Retired Chicago Police Ass'n v. City of Chicago*, 141 F.R.D. 477, 486 (N.D.Ill.1992), rev'd on other grounds, *RCPA I*, 7 F.3d at 609. In finding that the claims of the representative plaintiff were not typical of the class claims, the court stressed that the communications in question were made orally at numerous, separately-conducted, pre-retirement seminars for employees of various city departments. *See id.* at 487. While the plaintiffs offered some evidence regarding oral presentations made by city health and benefits office agents at police preretirement seminars, the district court found that the proposed representative plaintiff:

> d[*id*] not offer any evidence regarding communications to the prospective fire, laborer and municipal fund annuitants, let alone evidence that might support an inference that the communications made to the fire, laborer and municipal annuitants were typical of the communications made at the police pre-retirement seminars.

*Id.* Thus, the court held that RCPA did not satisfy the typicality requirement necessary for class certification for the prospective fire, laborer, and municipal fund annuitants. *See id.* at 488. The court also held that RCPA did not satisfy the associational standing requirements to sue on behalf of its own members. *See id.* at 492–93. RCPA appealed.

In *RCPA I*, we affirmed the district court's denial of class certification. *See* 7 F.3d at 599, 609. In doing so, we stressed that RCPA is comprised entirely of police retirees, that the only evidence in the record pertains to police preretirement seminars, and that the RCPA did not provide "any evidence other than speculation that any alleged communications by the City or the Funds to the fire, laborer, or municipal annuitants were the same as those made to the police." *Id.* at 597. Although we affirmed the district court's denial of the class certification, we disagreed with the court's methodology in assessing whether RCPA may nevertheless maintain the suit in its representational capacity on behalf of its own members. *See id.* at 599–607. We therefore remanded that issue to determine whether RCPA's claims would require the partic-ipation of the association's individual members. *See* id. at 601–03.

While the *RCPA I* appeal was pending, the City and Firemen's Fund initiated this satellite litigation, moving for sanctions against Krislov for alleged abuses that occurred during the earlier litigation. The City sought sanctions under both Rule 11 and 28 U.S.C. § 1927; Firemen's Fund's motion was only pursuant to Rule 11. The district court referred the issue to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).

On March 10, 1993, the magistrate judge entered a "memorandum opinion" recommending that sanctions be imposed on Krislov pursuant to Rule 11 and § 1927. The magistrate found that Krislov warranted sanctioning for his failure to correct the pleading deficiencies in his motions for intervention and for the "fundamental deficiencies" in his request for class certification, particularly his failure to offer any evidence that Firemen's Fund made any representation to its annuitants that they were entitled to free post-retirement health care coverage. On October 19, 1993, the magistrate judge issued a report and recommendation which, as amended on October 26, 1993, recommended that as a Rule 11 sanction Krislov pay the City $42,003.34 and Firemen's Fund $45,285.

Applying a clearly erroneous standard of review, the district court accepted the recommendations with some modifications and ordered Krislov to pay the City $31,502.51 and Firemen's Fund $45,285 as a sanction. *See Retired Chicago Police Ass'n v. City of Chicago*, No. 90 C 407 (N.D.Ill. Jan. 18, 1994) (order adopting magistrate judge's reports and recommendations) ("*Sanctions I*"). On April 26, 1994, the district court held that RCPA lacked associational standing to bring a claim against the City and Police Fund and dismissed the case. The court also later held Krislov in contempt and imposed fines for his failure to pay the sanction award. Krislov appealed all of these rulings.

In *RCPA II*, we affirmed the dismissal of the case for RCPA's lack of associational standing against the City and Police Fund and the district court's order holding Krislov in contempt. *See* 76 F.3d at 861–68, 870.

We did not reach the propriety of the sanctions because the district court improperly reviewed the magistrate judge's recommendations under a clearly erroneous standard. *See id.* at 868–69. We held that the "resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations *de novo*." *Id.* at 869. Thus, we vacated the award of sanctions and remanded the matter for review of the proposed sanctions under the proper standard. See *id.*

On February 5, 1997, the district court applied the correct standard of review to the magistrate judge's recommended sanctions and agreed that Firemen's Fund was entitled to a sanctions award of $45,285 under Rule 11. See *Retired Chicago Police Ass'n v. City of Chicago*, No. 90 C 407, 1997 WL 51673 (N.D.Ill. Feb.5, 1997) ("*Sanctions II*"). The court rejected the magistrate's recommendation that the City be awarded any sanctions and ordered the City to refund the sanctions Krislov had paid with interest. *See id.* at *6. Following the denial of Krislov's motion for reconsideration, the district court entered judgment in favor of Firemen's Fund and against Krislov on May 5, 1997.

Krislov appealed.

## II. Analysis

 Although Rule 11 was amended in 1993, we review Krislov's conduct under the standards applicable when his conduct took place. *See Cunningham v. Waters Tan & Co.*, 65 F.3d 1351, 1361 (7th Cir.1995). Under the version of Rule 11 in effect in 1990, the presence of a signature on a pleading or motion is a certificate that:

> the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, or belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. Parties or attorneys who violate the rule are subject to sanctions such as "an order to pay ... the amount of the reasonable expenses incurred because of the filing ... including a reasonable attorney's fee." *Id.* The primary objective of Rule 11 is to deter frivolous lawsuits, but compensating those forced to defend such litigation is also appropriate. See *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 645–46 (7th Cir.1992).

 We give the district court deference when reviewing a Rule 11 sanction. As we stated in *Mars Steel Corp. v. Continental Bank N.A.*,

> "because the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reviewable only where there has been an abuse of discretion."

880 F.2d 928, 933 (7th Cir.1989) (en banc) (quoting *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987)); see also *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

 Krislov's primary argument is against the district court's assertion that the complaint's only basis to include Firemen's Fund as a defendant was its class action allegations. *See Sanctions II*, 1997 WL 51673, at *3. He argues that RCPA's complaint asserted claims on behalf of all participants against the City and Funds, alleging they conspired to cause the reduction in health care benefits to all class members, including retired police officers who are members of RCPA. Because these claims do not hinge on any oral representation made by either the City or the Funds, Krislov argues that RCPA had independent bases for suing Firemen's Fund on behalf of RCPA's members even without considering whether RCPA could represent Firemen's Fund's annuitants in a class action. Thus, he believes that the "class allegation issue becomes irrelevant" if we find

that RCPA asserted claims directly against Firemen's Fund. See Pet. Br. at 19.

We cannot accept Krislov's contention that the "class allegation issue" becomes irrelevant. The district court held that Krislov merited sanctions for his class action allegations against Firemen's Fund involving promises of lifetime health care coverage. We agree that these allegations were not "well grounded in fact" and "not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. Even if we accepted Krislov's argument that the district court erred in asserting that RCPA's only basis in its complaint to include Firemen's Fund as a defendant was its class action allegations, it would not affect our conclusion that the district court did not err in sanctioning him. Krislov merited sanctions for the class action claims that rested on the oral representations, regardless of any potentially meritorious claims against Firemen's Fund.

Krislov also claims that the district court erred by not considering that his failed motion to intervene could have cured the complaint's defects and that Firemen's Fund's motion for sanctions was a tool for revenge and intimidation. We find that the district court did not abuse its discretion in its treatment of these issues.

### A.

#### 1.

Under the heading "Class Action Allegations," RCPA's complaint alleged:

14. Common Questions. There are questions of law and fact common to the class; specifically the City's actions in promising lifetime annuitant healthcare coverage and the enforceability of the provisions promised, according to their terms.

15. The Defendants have acted on grounds generally applicable to the class, namely denying them postretirement medical coverage. . . .

17. Typicality. The claims of the representative parties (that the terms of coverage should be as promised for the

class overall) are typical of the claims in the class.

RCPA then asserted claims against the City and the Funds for violations of the United States and Illinois Constitutions, breach of contract, estoppel, and breach of fiduciary duty.

"Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel*, 880 F.2d at 932. They must conduct a reasonable investigation of the facts necessary to support their claims. *See Anderson v. County of Montgomery*, 111 F.3d 494, 501 (7th Cir.1997). A reasonable inquiry before filing a class action must include some investigation into whether the plaintiff can satisfy the four prerequisites to class certification. *See* Fed.R.Civ.P. 23(a). As we concluded in *RCPA I*, RCPA never provided any evidence that Firemen's Fund's annuitants heard any promises regarding their benefits. See 7 F.3d at 597. In fact, Krislov had never stated that he made any inquiries about whether promises had been made to Firemen's Fund's annuitants before he filed the complaint. As far as we can discern, Krislov did not conduct a factual inquiry about the promises and filed claims that had no basis in fact. We therefore find no abuse of discretion in the district court's sanctioning of Krislov for RCPA's class actions claims based on these alleged promises. *See Durr v. Intercounty Title Co.*, 14 F.3d 1183, 1188 (7th Cir.1994) (holding Rule 11 sanctions appropriate when plaintiff did not investigate whether class really existed).

Also, even if Krislov made a reasonable inquiry into the experiences of other city workers and found some reason to believe that they too were promised free benefits, we agree with the district court that assumptions about the content of oral promises do not provide a reasonable legal basis to satisfy the typicality requirement of a class action. *See Sanctions II*, 1997 WL 51673, at *3. RCPA's promise-based claims depended "on the particular nature of the communications allegedly made in a particular instance and on each annuitant's reliance on that particular communication." *RCPA I*, 7 F.3d at 597.

In *RCPA I*, we concluded that "it simply cannot be assumed, especially because these communications were for the most part verbal, that the claims of the police officers 'have the same essential characteristics as the claims of the class at large.'" *Id.* (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). This assumption did not provide Krislov with a reasonable basis in law to pursue certification of a class. Thus, the district court did not abuse its discretion in sanctioning Krislov for this conduct.

### 2.

Krislov argues that the district court erred in sanctioning him because RCPA had independent bases for suing Firemen's Fund on behalf of RCPA's members even without considering whether RCPA could represent Firemen's Fund's annuitants in a class action. Krislov made this argument for the first time in his motion for reconsideration of sanctions in his third turn in district court. RCPA's complaint is sufficiently convoluted that we are unsure whether he properly asserted this type of claim directly against Firemen's Fund. Previously, he had not pursued this direct form of suit against Firemen's Fund, and his earlier statements in district court have made us skeptical regarding his assertion.

In *RCPA I*, we affirmed the district court's denial of class certification but disagreed with the lower court's methodology for evaluating RCPA's associational standing. *See* 7 F.3d at 599, 609. By remanding this question to the district court, we gave RCPA "the opportunity to demonstrate that it has associational standing to represent its members." *Id.* at 608. On March 21, 1994, Krislov filed a memorandum in support of RCPA's assertion of associational standing. That pleading stated that this "retiree healthcare case," when "shorn of class assertions," alleged that RCPA had:

> standing as an association to present the claim of its members herein against the City (to enforce the promised 55/21 fixed-rate healthcare plan) and against the Police Fund (to prevent the termination of its subsidy) and its trustees (for entering into the agreement with the City to permit both the City and the Funds to terminate both groups' obligations to participants).

Mem. in Supp. of Associational Standing, *Retired Chicago Police Ass'n v. City of Chicago*, No. 90 C 407 (N.D.Ill. Mar. 21, 1994). Krislov admitted that RCPA's direct claims were limited to the City, the Police Fund, and its trustees.[3] We are inclined to hold Krislov to his earlier statements about the extent of his direct claims.

Moreover, even if we assume that Krislov did assert claims directly against Firemen's Fund for participating in the agreement to reduce police retirees' vested benefits and that RCPA simply elected to move forward with its claims against the City, Police Fund, and its trustees after *RCPA I*, Krislov is not absolved from his sanctionable conduct by stating meritorious claims.

■ "A litigant cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not *entirely* frivolous." *Melrose v. Shearson/Am. Express, Inc.*, 898 F.2d 1209, 1215 (7th Cir.1990) (citing *Hill v. Norfolk and W. Ry. Co.*, 814 F.2d 1192, 1200 (7th Cir.1987)); *see also Dodd Ins. Servs. v. Royal Ins. Co.*, 935 F.2d 1152, 1158 (10th Cir.1991); *Cross & Cross Properties, Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir.1989); *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir.1988); Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1335 at 92 (1990) (stating that "Rule 11 may be applied to a single aspect of a document so

---

**3.** Krislov also argues that the district court imposed sanctions because it considered itself bound by our earlier statements about the case. In dicta summarizing the proceedings, we stated in *RCPA II* that "[t]he effect of our affirmance of the denial of class certification was to dismiss three of the four Funds from the litigation." 76 F.3d at 861. Contrary to Krislov's assertions, this statement is not inaccurate. Our decision in *RCPA I* together with RCPA's characterization of its own claims had the effect of dismissing the other funds; RCPA did not consider its direct claims to be against the other three funds. Thus, we do not fault the district court for relying on RCPA's characterization of its own claims.

that the sufficiency of some portions of a signed paper will not immunize it in its entirety"). To conclude otherwise "would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions." *Dodd Ins. Servs.*, 935 F.2d at 1158 (quoting *Cross & Cross Properties*, 886 F.2d at 505).

While RCPA's complaint may not have been entirely frivolous, on the question of class certification, "RCPA's primary assertion [wa]s that the City and the various Funds communicated to pension annuitants the availability of effectively free lifetime health care and that annuitants relied upon those communications." *RCPA I*, 7 F.3d at 597. That portion of the complaint was neither "wellgrounded in fact" nor "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Fed.R.Civ.P. 11. Such conduct in and of itself is violative of Rule 11 and provides a sufficient basis for the district court's decision to impose sanctions.[4]

### B.

▮▮▮▮ Next, Krislov argues that the district court erred by not considering that his subsequent, nonfrivolous motion to intervene could have cured the complaint's defects if it had not been denied. We do not see an error in the district court's analysis. Krislov's violation of Rule 11 was complete when he signed and filed his complaint. *See Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 596 n. 10 (7th Cir.1989); *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir.1987); *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 453–54 (7th Cir.1987). Because Rule 11 focuses on inputs, "a lawyer cannot

absolve himself of responsibility by dismissing his client's suit," *Szabo Food Serv.*, 823 F.2d at 1079, nor can a lawyer do so through motions to intervene.

### C.

Finally, Krislov argues that "sanctions are not appropriate where the party seeking sanctions is using them as a tool for revenge or intimidation." Pet. Br. at 24. As support, Krislov cites decisions involving situations in which courts have exercised their discretion to set off litigants' misconduct to either reduce or deny requests for sanctions by the parties in the same litigation. *See Automatic Liquid Packaging, Inc. v. Dominik*, 909 F.2d 1001, 1006 (7th Cir.1990); *Johnson v. Sullivan*, 714 F.Supp. 1476, 1486 (N.D.Ill. 1989), aff'd. on other grounds, 922 F.2d 346 (7th Cir.1990) (en banc). The improper motivation to which Krislov refers stems from the related litigation in Illinois state court in which the trial judge criticized the Firemen's Fund's trustees. The district court did not find that earlier behavior pertinent to its analysis.

Because the district court is more familiar with the issues and litigants, it is better situated than we are to recognize whether this sanction request has been improperly motivated. *See Cooter & Gell*, 496 U.S. at 402, 110 S.Ct. 2447. Krislov has not provided us with a reason to question the district court's conclusion. He has not identified a pleading, motion, or other paper signed and filed by Firemen's Fund that allegedly violated Rule 11. All that is known is that there was animosity in earlier litigation and that Krislov has not met his responsibility under Rule 11 to submit a complaint well grounded in fact and warranted by existing law in this litigation. We therefore do not find that the district court abused its discretion.[5]

---

4. Krislov also attempts to immunize his behavior by arguing that "sanctions cannot be imposed if the court has not considered alternative theories contained in the complaint." Pet. Br. at 17 (citing *Katz v. Household Int'l, Inc.*, 36 F.3d 670, 676 (7th Cir.1994)). In *Katz*, we refused to affirm the district court's imposition of sanctions on a claim because of its failure even to note an alternative theory for bringing the claim which was not unwarranted by existing law and not

necessarily without factual support. *See id.* at 675–76. Our analysis in *Katz does not apply in this case where the district court sanctioned Krislov for filing frivolous claims even though Krislov also raises meritorious ones. Accordingly, we reject Krislov's contention otherwise.*

5. Krislov also claims that the sanctions were excessive because the district court erred in not considering the effect of his failed motion to

For all of the above reasons, we Affirm the judgment of the district court.

intervene and the effect of Firemen's Fund's trustees uniquely vindictive motives. Because we do not find that the district court abused its discretion in its treatment of these issues, they are not reasons to hold Krislov's sanctions to be excessive.